STATE of Missouri, Respondent,

v.

**Lloyd GEER, Jr., Appellant.**

**No. WD 32093.**

Missouri Court of Appeals,
Western District.

Sept. 22, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 1981.
Application to Transfer Denied
Dec. 14, 1981.

James W. Fletcher and Gary L. Gardner, Kansas City, for appellant.

John Ashcroft and Kristie Green, Jefferson City, for respondent.

Before TURNAGE, P. J., and CLARK and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Lloyd Geer, Jr., appeals his conviction for abuse of a child, § 568.060.1(a), RSMo 1978. In accordance with the jury verdict, he was sentenced to two years imprisonment. *See* § 558.011.1(4), RSMo 1978. The judgment is affirmed.

Appellant alleges that the trial court erred: (1) in overruling appellant's objection to certain comments made by the prosecutor in closing argument which he claims constituted an improper attempt to define reasonable doubt to the jury; and (2) in failing to exercise its discretion to consider probation in lieu of the two-year sentence.

Appellant does not challenge the sufficiency of the evidence, and therefore the pertinent facts will be stated briefly. Appellant was indicted for infliction of cruel and inhuman punishment upon a child of less than seventeen years old, by biting her and causing her injury. At the time of the offense, appellant was living with the victim, who was his one year old daughter, and the victim's mother. Appellant stated to the police that no adults, except for him and the mother, were around the child for several days before she was taken to a babysitter.

The babysitter noticed "spots" on the child's stomach and later noticed more marks about the child's back and face. The babysitter alerted a neighbor to help her determine the source of these marks. The babysitter and the neighbor were the only adults around the victim when she was at the babysitter's that day.

The police photographed the victim's injuries. Dental casts were made of the upper and lower teeth of appellant, the mother and the babysitter, all under the direction and control of a dentist. The dentist, an expert in forensic odontology, testified to several expert opinions he could make based on his comparison of the dental casts with the photographs, to wit: (1) the injuries to the child included three human adult bite marks on her stomach; (2) neither the babysitter nor the mother had dental casts consistent with the marks, and that neither of those individuals made the marks; (3) appellant's dental cast was consistent with the marks; (4) it was "highly improbable" that someone other than appellant made the marks; and (5) it was "highly unlikely [that] anyone else in town had teeth that looked like [those of the appellant]".

I

Appellant's first contention concerns the following remarks made by the prosecutor in her closing argument, wherein the prosecutor stated:

You look at these teeth and you look at these teeth, and look at the differences. It's not reasonable, folks, that the dentist would come in here and try to make a case against this defendant. He didn't even know this man. He didn't know any of these people. He took three sets of teeth and he compared them to a photograph of a bite mark and he said this, he said these teeth are consistent with those bite marks and he also said it is highly improbable that anyone else could have made those bite marks. As I recall his testimony, he said it was highly improbable that anyone else in Kansas City had

teeth like this man. And I urge you to look at those teeth and see for yourself how unusual they are. You *combine the probability of someone else having teeth like that with the probability of that person being in [the babysitter's] apartment that day without her knowing about it, combine those two* things, put those two things together, those two *probabilities, and I'll tell you what you have, you have beyond a reasonable doubt.*

MR. DEHARDT: May we approach the Bench, please?

(COUNSEL APPROACHED THE BENCH AND THE FOLLOWING PROCEEDINGS WERE HAD:)

MR. DEHARDT: Your Honor, I object at this point because she is attempting to and has defined what beyond a reasonable doubt is for the jury and for that reason I object.

THE COURT: Overruled.

(THE PROCEEDINGS RETURNED TO OPEN COURT.) (Emphasis added.)

Appellant claims that this argument was error as it attempted to define for the jury proof beyond a reasonable doubt, a task incumbent only upon the court through its instruction.

*State v. Jones*, 615 S.W.2d 416 (Mo.1981) relied upon by appellant is the most recent case following a long line of decisions on attempts to define reasonable doubt. The *Jones* appeal asserted only the single point of improper attempt to define reasonable doubt. The prosecutor had stated: "[Y]ou're not permitted to say, 'I don't be-

lieve they proved it,' because if you believe he did it and if that belief is reasonable, he is guilty beyond a reasonable doubt."

The court reversed the conviction in *Jones* because of the improper attempt to define reasonable doubt. In reversing, the supreme court noted that MAI–CR 2.20, effective January 1, 1974, has only an abbreviated reference to the term reasonable doubt and prohibits any elaboration or further definition of the term (MAI–CR2d 2.20, Notes on Use, No. 3).[1] The court cited to *State v. Van*, 543 S.W.2d 827, 830[1, 2] (Mo.App.1976) where the court stated that: "MAI–CR 2.20 does not explain or define reasonable doubt, probably because 'Reasonable doubt is reasonable doubt, and that is about all that can be said in regard to it.' *State v. Talmage*, 107 Mo. 543, 17 S.W. 990, 991 (1891). The term needs no further definition." 543 S.W.2d at 830.

The cases cited in *Jones* fall under two separate lines of reasoning, evidenced by the decisions in *State v. Belleville*, 530 S.W.2d 392, 395 (Mo.App.1975) and *State v. Wilbon*, 561 S.W.2d 133, 134 (Mo.App.1978).

In *Belleville*, the court concentrated on certain facets of the comments in light of the entire case. In that decision the court set out three factors it considered in holding the prosecutor's comments nonprejudicial error: (1) the definition was only one sentence long and not unduly dwelt upon; (2) the prosecutor then properly discussed reasonable doubt in relation to the evidence; and (3) there was strong evidence of defendant's guilt.[2]

---

1. Prior to January, 1974 and the adoption of MAI–CR, juries were instructed that the term reasonable doubt "ought to be a substantial doubt touching the defendant's guilt and not a mere possibility of defendant's innocence." *See State v. Taylor*, 506 S.W.2d 94, 96[4] (Mo. App.1974); *State v. Yarbrough*, 506 S.W.2d 90, 92[1] (Mo.App.1974). This prohibition against attempts to define reasonable doubt has been held to apply to prosecutor's comments in both voir dire and their arguments to the jury. *State v. Burnfin*, 606 S.W.2d 629, 631[4] (Mo. 1980); *State v. Van, supra; State v. Belleville*, 530 S.W.2d 392, 395[4] (Mo.App.1975). *Cf. State v. Henderson*, 547 S.W.2d 141, 144[7] (Mo.App.1976) (held that the prohibition arises

from general rules of oral argument and not from MAI–CR2d 2.20 Notes on Use).

2. In *Belleville*, the prosecutor defined reasonable doubt to the jury in his closing argument using the pre-1974 language quoted in footnote 1. The court held such definition was error in light of MAI–CR 2.20 but that it "did not result in a deprivation of the defendant's substantial rights or a fair trial", notwithstanding defense counsel's immediate objection at trial court, and thus affirmed defendant's conviction. *Id.* at 395. Since *Belleville*, Missouri courts have held similar remarks by overzealous prosecutors improper, but not prejudicial error.

These cases have involved comments in both voir dire and closing argument, and have been

In *Wilbon,* the court focused on the difference between an impermissible *definition* and a permissible *discussion.* The court stated that a discussion was when the prosecutor is merely "arguing the facts as they pertain to the court's instructions . . .," and that such argument is not even error. 561 S.W.2d at 134. When the prosecutor merely relates the evidence to the instruction on burden of proof, as he may do with any instruction, there is no further analysis necessary because there has been no *definition* in violation of MAI.[3]

The *Jones* decision was based on three factors not totally the same as those in pre-*Jones* cases:

> Three things stand out about the argument in this case: First, the prosecutor told the jury that a "reasonable belief" satisfied the requirement of proof beyond a reasonable doubt. In so doing, he *strayed into the language of civil proceedings* where the burden of proof is submitted in terms of whether or not the jury believes the propositions in issue. MAI 3.01. The term "reasonably" [sic] is not employed in that connection, but it is inferred and certainly adds nothing to the requirement of belief. Thus, the prosecutor in this case undertook to define reasonable doubt in wholly erroneous terms. Second: The prosecutor's statement was *promptly objected to and the objections were overruled, giving the argument the imprimatur of the trial court.* Third: The prosecutor was not content with a passing reference to the subject, but upon the overruling of defense objection, proceeded to repeat his erroneous definition of reasonable doubt.

> Neither *Belleville* nor *Burnfin,* invoked by the state, can justify disregard of the error in this case. The evidence of guilt was strong, but the rule announced in *State v. Degraffenreid,* 477 S.W.2d 57 (Mo. banc 1972) may not be applied to excuse as harmless the error in this case. 615 S.W.2d at 420 (cites omitted, emphasis added).

In this case, the prosecutor essentially said that if the jury combined the two probabilities of (1) someone else in town with teeth similar to those of appellant and (2) of someone else being with the victim at the apartment of the babysitter, it would have proof beyond a reasonable doubt. Appellant claims this argument is comparable to *Jones* and should be cause for reversal. Appellant claims the argument was promptly objected to and the objection was overruled, thereby giving the argument the imprimatur of the trial court. Appellant next contends that the use of the word "probability" is akin to the word "preponderance"

---

reviewed when properly preserved for review or as plain error where defense counsel made no objection to the comments. *State v. Ball,* 622 S.W.2d 285 (Mo.App.1981), ("[I] didn't say beyond any and all doubt . . . more than just a slight doubt . . . the phrase beyond a shadow of a doubt is meaningless in the law."—closing argument, with objection); *State v. Simmons,* 602 S.W.2d 13, 15–16[3, 4] (Mo.App.1980) ("Is there anyone here that feels they would require proof beyond any doubt?"—voir dire, with objection); *State v. Hammond,* 578 S.W.2d 288, 290[5, 6] (Mo.App.1979) ("anything less than a reasonable doubt would not be enough . . . must be based on 'reason' "—closing argument, with objection); *State v. Harper,* 553 S.W.2d 895, 897–898[7, 8] (Mo.App.1977) ("not an impossible burden . . . rather a very realistic burden." —closing argument, improper objection); *State v. Henderson, supra,* (not "beyond shadow of a doubt" or "beyond any doubt"—closing argument, with objection); *State v. Van, supra,* (not "beyond all doubt"—voir dire, with objection); *State v. Sanders,* 541 S.W.2d 782, 784[1, 2] (Mo.App.1976) (not "beyond any doubt"—closing argument, no objection); *State v. Sanders,* 539 S.W.2d 458, 464[6] (Mo.App.1976) ("a substantial doubt, not just a mere possibility of innocence."—closing argument, with objection).

3. In many of the opinions cited thus far, after the courts either found the error nonprejudicial or deemed the remarks mere discussion, the holding was oft-suffixed by a caveat to prosecutors such as in *State v. Ball, supra,* where the court stated "[A]lthough we condemn the practice and admonish all prosecutors and defense counsel not to inform the jury what the law is . . .," or *State v. Harper, supra,* where the court "caution[ed] prosecutors that this ruling is not an invitation for them to continue to skate on thin ice."

and therein strays into the burden in civil proceedings.

The transcript does not support appellant's contentions. First, neither the objection nor its being overruled was made within the hearing of the jury and therefore could not have given the prosecutor's argument, even if improper, the imprimatur of the court. Second, the argument in *Jones* equated a reasonable belief of guilt with proof beyond a reasonable doubt. In the present case, the prosecutor's words "highly unlikely" or "highly improbable" related only to testimonial evidence to satisfy the reasonable doubt standard. This was not a definition of reasonable doubt at all, but a discussion of the evidence in light of that standard. The prosecutor was merely "arguing the facts as they pertain to the court's instructions . . ." *State v. Wilbon, supra.* The third point of *Jones*, the repetition of the erroneous definition, is not addressed by appellant.[4]

Having failed to satisfy any of the three points of *Jones*, appellant's first point must be rejected.

## II

█ Appellant's second point charges that the trial court erred in failing to exercise its discretion to consider appellant's presentence investigation (PSI) and to accept or reject its recommendation of probation. Appellant claims that this is required by §§ 557.011.2, 557.036 and 557.036.3, RSMo 1978, as well as the due process clause of the fourteenth amendment. Accepting appellant's proposition would mean that a trial court would be under a duty not only to consider probation, but to state on the record its reasons for acceptance or rejection of that possible probation (including reasons for rejection of a PSI if ordered).

In *State v. Phroper*, 619 S.W.2d 83 (Mo. App.1981), the defendant charged that the trial court erred in not considering probation when, after allocution, the trial court incorrectly and inexplicably concluded that the defendant could not be placed on probation if an appeal was taken. The Missouri Court of Appeals, Western District, held that the trial court was in error when it "erroneously concluded that it would not *even* consider probation . . . ." *Id.* at p. 90 of slip opinion. *Phroper* did, however, reaffirm the Missouri cases prior to the January 1, 1979 enactment of the Criminal Code holding that a trial court's determination as to the grant or denial of probation was entirely discretionary. That is to say, a trial court has discretion under the statute to consider probation, but is not required to grant probation as a matter of right. Further, whatever the trial court's determination, it was not subject to appellate review. *See Smith v. State*, 517 S.W.2d 148, 150 (Mo.1974); *Benson v. State*, 504 S.W.2d 74, 76 (Mo.1974).

Appellant now asks this court to overrule *Phroper* and rewrite the criminal code to say that a trial court (a) is required to consider probation *and* (b) make a record of

---

4. Most vexing is that earlier in closing argument, the prosecutor made the following comments that were not objected to by appellant: "It does not say all doubt. It says a reasonable doubt. And if you are reasonable, you have no choice but to convict Lloyd Geer of the abuse of [the victim]." This language is close to the argument in *Jones* and *State v. Burnfin, supra*, ("If you think he did it and if that thought is reasonable, we have proved him guilty"). Since there was no objection to this argument, the matter of error is not preserved and cannot be used to meet the *Jones* criteria. The erroneous definition and prejudicial impact, in light of its effect on the jury, would have to be considered under plain error. Rule 30.20. It cannot be said as a matter of law that the jury was so misled by the statement of the prosecutor so as to result in manifest injustice or a miscarriage of justice. *State v. Burnfin, supra*. The holding in *Jones*, however, should be clear signal that courts are no longer to condone overzealous closing arguments of prosecutors. Defense counsel should be aware of obligations to object to attempts of the prosecutor to define reasonable doubt. The threshold for any objection should be the prosecutor's defining reasonable doubt, i. e. submitting to the jury his own terminology of what reasonable doubt is or is not, and not merely discussing the evidence in light of the reasonable doubt standard.

its reasons if probation is not granted. The statutory sections appellant cites *require* no such action by the trial court, but merely allow the trial court dispositions other than imprisonment from which to choose.[5] *Phroper* stated clearly that the holdings in *Smith* and *Benson, supra,* still control, and that its remand was simply to afford the trial court the opportunity to exercise the discretion it erroneously disavowed in the first instance, without looking over the trial court's shoulder at the exercise of that discretion. *See also State v. Austin,* 620 S.W.2d 42 (Mo.App.), decided by the Eastern District on July 28, 1981.

The court in the present case properly recognized the possibility of probation and clearly exercised its discretion concerning the grant or denial of probation. Conversely, in *Phroper,* the trial court was reversed only because it totally failed to exercise its discretion, *i. e.* its power to choose whether or not to even consider probation. The record here indicates ten pages of transcript in which the trial court heard discussion by the parties on the PSI and the proprieties of probation before it specifically chose imprisonment as the proper disposition in the matter. There is no reason to require any more of the judicial process.

The judgment is affirmed.

---

5. Sections 549.071.1 and 557.011.2, RSMo 1978 allow the trial court to make probation one of several dispositions posited as alternatives, and does not dictate the court must consider probation. Further, § 557.036.1, RSMo 1978 requires only that the trial court make a disposition of the matter without specifying which disposition should be made. The statute merely states that upon a finding of guilt "the court shall decide the extent or duration of sentence or other disposition to be imposed under all circumstances ...."