Randy VILLINES and Julieta Villines,
Plaintiffs–Respondents,

v.

Jack MIER and Robin Mier, a/k/a
Robin Ridesatthedoor, Defen-
dants–Appellants.

No. 23844.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 9, 2001.

Lisa C. Henderson, Buffalo, for Appellants.

Jerry M. (Jay) Kirksey, Douglas, Lynch, Haun & Kirksey, Bolivar, for Respondents.

JOHN E. PARRISH, Judge.

Jack Mier and Robin Mier (defendants) appeal a judgment notwithstanding the verdict entered following a jury trial of an action for breach of contract. This court affirms.

Randy Villines and Julieta Villines (plaintiffs) and defendants executed a written document dated June 5, 1998, together with addenda, regarding the sale and purchase of a tract of real estate located in Polk County, Missouri, on which a house and at least one outbuilding were situate. Plaintiffs were sellers. Defendants were purchasers. The sale was to close September 24, 1998.

Plaintiffs expected defendants, or a realtor on their behalf, to be at the property that was being sold at noon on September 24 to walk through the house. No one appeared. Plaintiffs went to the Coldwell Banker realty office in Bolivar where the closing was scheduled for 2:00 p.m. Plaintiffs' real estate agent, Billy Miller, was there. Virginia Thompson and Don Thompson, who were real estate agents, were there, together with "the finance lady that was bringing the [defendants'] check for the closing to sell the house." Defendants did not appear. After 30 minutes, the Thompsons volunteered to drive to Louisburg to the house that was to be sold to see if defendants were there. Plaintiffs waited at the real estate office for a call from the Thompsons. They called about 3:00 p.m. and reported defendants were not at the house in Louisburg. Plaintiffs returned to their home.

The action that is the subject of this appeal was filed November 20, 1998. It was brought in three counts. Count I was an action for specific performance of a contract. Count II was an action for breach of contract. Count III was an action on an earnest money note for $500 and for attorney fees.

Following a jury trial, judgment was entered for defendants as follows:

## JUDGMENT

**THIS MATTER** comes before the Court on June 6, 2000, with the parties and counsel present. Plaintiffs, by and through counsel, dismiss Count I of the Petition filed herein. Defendants' Motion to Dismiss as to Counts II and III are [sic] overruled. The parties announce ready for trial.

**WHEREUPON,** the jury, having heard the evidence and the statements of counsel, and, being instructed by the Court, having reached a verdict and rendered a finding in favor of Defendants on the Plaintiffs' claim;

**IT IS ORDERED, ADJUDGED AND DECREED** that judgment be entered in accordance with the verdict herein, in favor of Defendants on Counts II and III of the petition filed herein. All other relief requested in this action and not specifically granted herein, is hereby denied. Defendants are discharged.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Plaintiffs pay the costs of this action.

It recites it was "[e]ntered this *6th* day of June, 2000," and is signed by the circuit judge.[1]

A Motion for Judgment Notwithstanding the Verdict was filed June 20, 2000. It was heard August 14, 2000, and granted. A docket entry reflecting the granting of the motion states, "COURT FINDS JUDGEMENT WAS AGAINST WEIGHT OF EVIDENCE AND CONTRARY TO INSTRUCTIONS." An Order for Judgment Notwithstanding the Verdict states: COME [sic] NOW the Court, having heard the evidence, adduced the pleadings, and argument of counsel, and sustains plaintiff's Motion for Judgment Notwithstanding the Verdict pursuant to Rule 72.01(b) of the Missouri Rules of Civil Procedure. Pursuant to Rule 72.01(b), the court hereby sets aside the verdict of the jury entered on June 6, 2000, and enters judgment in favor of the Plaintiffs for the sum of Eighteen Thousand Four Hundred and Seventy Seven Dollars and Seventeen Cents ($18,477.17), plus costs taxed to defendants.

The circuit judge's signature appears on the order for judgment. The circuit clerk's date-filed stamp reciting the date "AUG 14, 2000" is affixed at the top right-hand corner of the document.

■ Defendants' first point on appeal is directed to a motion to dismiss plaintiffs' petition that the trial court denied. Point I asserts the trial court erred in failing to grant a motion to dismiss filed by defendants "because [plaintiffs'] pleadings were legally insufficient to state a cause of action in that [plaintiffs] failed to plead (1) the parties' capacity to contract, (2) consideration for the contract, (3) definite and enforceable obligations of the parties, (4) performance by [plaintiffs] of all conditions precedent, (5) allegations of breach by the [defendants], and (6) damages."

■ "A pleading is good against an objection that it fails to state a claim upon which relief can be granted if averments of the pleading accorded every reasonable and favorable intendment, invoke principles of substantive law which may entitle the pleader to relief." *U.S. Suzuki Motor Corp. v. Johnson,* 673 S.W.2d 105, 106

---

1. The copy of the judgment that is included in the legal file does not reveal a date-filed stamp of the circuit clerk's office. Copies of docket entries included in the legal file do not reveal the filing of a judgment. The circuit clerk's certificate that appears at the end of the legal file, however, certifies a "Judgment filed June 20, 2000," as a document that is a true copy of an original that appears of record in her office.

(Mo.App.1984). "To state a cause of action for breach of contract, a plaintiff must allege the following: 1) the existence of an enforceable contract between the parties; 2) mutual obligations arising under the terms of the contract; 3) defendant did not perform; and 4) plaintiff was thereby damaged from the breach." *Rice v. West End Motors, Co.*, 905 S.W.2d 541, 542 (Mo.App. 1995). Plaintiffs' petition satisfied these requirements. Point I is denied.

Point II argues the trial court erred in granting plaintiffs' motion for judgment notwithstanding the verdict "because reasonable minds could have differed after consideration of all evidence and reasonable inferences to be drawn therefrom, upon the issues of (1) whether there was a valid contract and if so, whether [defendants] were in breach of the contract; (2) whether [plaintiffs] were justified or excused from performance under the contract; and (3) whether the contract provision for liquidated damages was so disproportionate to the damages actually sustained as to make the provision unenforceable."

 In considering Point II, this court is mindful that this was a jury trial; that fact issues are submitted to the jury by means of jury instructions.

> "Jury instructions are the means by which courts inform the jury as to the factual elements it must find to determine liability in a civil case." *Seitz v. Lemay Bank and Trust Co.*, 959 S.W.2d 458, 464 (Mo. banc 1998) (Robertson, J., dissenting). "A jury instruction is a 'direction given by the judge to the jury

concerning the law of the case.'" *State v. Storey*, 901 S.W.2d 886, 892 (Mo. banc 1995), quoting *Black's Law Dictionary* 856 (6th ed.1990).

*Trimble v. Pracna*, 51 S.W.3d 481, 495 (Mo.App.2001).

 The record on appeal does not reveal that the facts defendants suggest could have been found in their favor were placed before the jury for determination.[2] Point II does not challenge the sufficiency of the verdict-directing instruction that identified what plaintiffs were required to prove in order for verdict to be entered in their favor. "An appellate court reviews only issues raised in the points relied on in an appellant's brief." *State v. Rogers*, 973 S.W.2d 495, 498 (Mo.App.1998). *See also Russ v. Russ*, 39 S.W.3d 895, 899 n. 5 (Mo.App.2001); *Greene County Concerned Citizens v. Board of Zoning Adjustment of Greene County*, 873 S.W.2d 246, 255 (Mo. App.1994). Point II is denied.

Point III asserts error in the trial court award of "attorney fees in the amount of $6,677.17." Defendants argue "that said sum amounted to the total fees incurred by [plaintiffs] to their attorney during the course of litigation on all counts, although attorney fees were not pled in either Count I or Count II, and were therefore disproportionately high in relation to the services rendered to [plaintiffs] under Count III." Defendants further complain their attorney "was not provided with adequate notice and opportunity for hearing on [plaintiffs'] affidavit of attorney fees and costs."

---

**2.** Defendants did not include a copy of plaintiffs' verdict-directing instruction in the record on appeal. Plaintiffs included what they represented to be a copy of the verdict-directing instruction that was given as an appendix to their respondents' brief. It instructed the jury to enter verdict for plaintiffs if defendants did not close on the purchase of the property, and because of that failure, defendants' contract obligations were not performed and plaintiffs were damaged. The unrefuted evidence at trial was that these things occurred.

The judgment notwithstanding the verdict assesses damages of $18,477.17. It does not itemize the damages. Defendants argue this amount "presumably represented $11,800.00 in liquidated damages, and $6,617.17 in attorney fees." Defendants suggest any amount of attorney fees included in the judgment amount, by the terms of the contract and the pleadings plaintiffs filed in this case, are attributable to the promissory note to which Count III was directed, the "earnest money note."

Defendants base their calculation of the amount of the judgment attributable to attorney fees on the liquidated damages provision of the real estate contract that was the subject of Count II. It provides, "If this Contract shall not be closed for the fault of [defendants], then 10% of the total sale price shall be paid by [defendants] to [plaintiffs] as liquidated damages, it being agreed that actual damages are difficult, if not impossible, to ascertain." The contract price for the property was $118,000. Defendants, therefore, calculated the amount attributable to attorney fees by deducting 10% of that amount, $11,800, from the amount of the judgment, $18,477.17, thus determining the amount allowed for attorney fees to be $6,677.17.

■ Defendants argue that Count II of the plaintiffs' action did not allege "a cause of action for attorney fees"; that Count III sought recovery on the "earnest money note"; that Count III did not seek attorney fees other than those allowable by the terms of the earnest money note.

Count III of the petition incorporated the allegations in Counts I and II. Paragraph 2 of Count II alleged defendants failed to comply with the terms of the real estate contract. Count III, in which the allegations from Count II were incorporated, sought, among other damages, attorney fees.

The earnest money note provides, "If payment of this note is not made when due and it is placed with an attorney for collection, the cost of collection, including a reasonable attorney's fee, shall be added to the unpaid balance." The face amount of the note is $500. The real estate contract, in the same paragraph that provides for recovery of liquidated damages, states, "If legal action is brought arising out of the Contract, the prevailing party shall be entitled to a reasonable attorney fee."

■ The trial court obviously concluded that the allegations in Count III and its prayer for relief included a request for attorney fees based on the real estate contract and the earnest money note. This court finds no error in that assessment. With respect to the amount of the judgment attributable to attorney fees, the real estate contract provided for the award of reasonable attorney fees to the prevailing party. The earnest money note provided for the award of reasonable attorney fees with respect to its collection. "Where the claim to attorneys' fees is based upon a contract, the court must adhere to the terms of the contract and may not go beyond it." *Harris v. Union Elec. Co.*, 766 S.W.2d 80, 89 (Mo. banc), cert. denied, 492 U.S. 919, 109 S.Ct. 3245, 106 L.Ed.2d 592 (1989). This court finds no abuse of discretion by the amount of attorney fees the trial court awarded.

■ Defendants further complain that no hearing was held by the trial court regarding attorney fees. Defendants contend they should have had the opportunity to be heard regarding the amount of attorney fees to be allowed. Appellate courts defer to the trial court in determining the amount of attorney fees to be allowed in that it is considered the expert on the question of attorney fees. *Miller–Stauch Const. Co. v. Williams–Bungart Elec., Inc.*, 959 S.W.2d 490, 496 (Mo.App.1998).

"The setting of attorney's fees is within the sound discretion of the trial court and should not be reversed unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration." *Id.* The trial court had the affidavit of plaintiffs' attorney that identified the time spent on the case and other expense items related to attorney fees. The amount of fees assessed was not arrived at arbitrarily. This court does not find the procedure the trial court used to assess damages to have been an abuse of discretion. Point III is denied. The judgment is affirmed.

GARRISON, P.J., and PREWITT, J., concur.